

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VIRGINIA L. VARNER,

    Plaintiff,

v.

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

CIVIL ACTION NO. 04 CV 71425 DT

DISTRICT JUDGE GERALD E. ROSEN

MAGISTRATE JUDGE VIRGINIA M. MORGAN

## REPORT AND RECOMMENDATION

### I. Introduction

This Social Security disability case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated herein, the court recommends that the defendant's motion be **GRANTED** and that plaintiff's motion be **DENIED**.

### II. Background

On May 6, 1998, plaintiff filed an application for Social Security Disability Insurance Benefits (DIB), alleging that she became disabled on June 13, 1997, due to back pain and bi-lateral carpal tunnel syndrome.[1] (Tr. 66-77) The claim was denied by Administrative Law Judge

---

[1] Prior to the alleged onset of her disability, plaintiff worked at General Motors assembly facilities installing parts on cars and trucks. She maintained such employment for approximately 18 years.

(ALJ) William J. Musseman on February 23, 2000. (Tr. 219-32) The Social Security Administration's (SSA) Appeals Council denied plaintiff's request for review of the ALJ's decision, which thus became the final determination of the Commissioner. Plaintiff did not seek judicial review of the Commissioner's decision.

Plaintiff filed a second application for DIB on January 16, 2001, claiming that she became disabled on June 13, 1997, due to back, neck, hand, and leg pain. (Tr. 250-60) Following the initial denial of her claim by the SSA, plaintiff requested a hearing before an administrative law judge (ALJ). The hearing was held on April 3, 2003, before ALJ Regina Sobrino. (Tr. 481-505) On May 17, 2003, the ALJ issued a decision denying plaintiff's claim. (Tr. 19-27) The ALJ determined that plaintiff suffered from bilateral carpal tunnel syndrome, degenerative joint disease of the cervical spine, degenerative joint disease of the lumbar spine, depression, and an anxiety disorder, and that her impairments were severe, but that she did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. (Tr. 24-25) The ALJ further determined that plaintiff could not perform her past work, but that she had the residual functional capacity (RFC) to perform a limited range of light work and, based on the hearing testimony of a vocational expert (VE), that there were a significant number of jobs in the regional and national economy that plaintiff could

perform.[2] Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 25-27)

Following the ALJ's denial of her application, plaintiff filed a request for review of the ALJ's decision with the Appeals Council. The Appeals Council denied the request on February 19, 2004. (Tr. 8-10) The ALJ's decision thus became the final determination of the Commissioner.

On April 15, 2004, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the parties have filed cross-motions for summary judgment. Plaintiff contends in her motion that the ALJ erred in failing to find that she was disabled under Table 1, Rule 201.12 of the Social Security Disability "grid," 20 C.F.R. Pt. 404, Subpt. P, App. 2. Plaintiff also claims that the hypothetical question posed by the ALJ to the VE regarding her functional limitations was inaccurate.

### III. Legal Standards

#### A. Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[2]"Light work" is defined in 20 C.F.R. § 404.1567(a) as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting of or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work

42 U.S.C. § 423(d)(2)(A). The plaintiff bears of the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate disability claims. In Foster, Id. at 354, the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Next the claimant must demonstrate that she has a "severe impairment." 20 C.F.R. § 404.1520(c). A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. 20 C.F.R. § 404.1520(e). Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. 20 C.F.R. § 404.1520(f). The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Further, " the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### IV. Analysis

#### A. Disability Under the "Grids"

Plaintiff was 51 years of age at the time she filed her second application for DIB, and was thus an individual "approaching advanced age" under 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g). Further, plaintiff has a high school education, and the ALJ found that her past work

was unskilled. (Tr. 27) Under 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.13, a person, such as plaintiff, who is closely approaching advanced age, has a high school education, an employment history involving unskilled work, and is limited to performing light work is deemed to be "not disabled," notwithstanding any non-exertional impairments. Plaintiff contends that the ALJ should have applied Rule 201.12 of the sedentary work grid (Table No. 1), under which a finding of disabled would have been warranted given plaintiff's age and vocational profile.

The court had great difficulty discerning from plaintiff's brief the basis for her argument that ALJ did not properly apply the grids. She appears to contend that the jobs identified by the VE could conceivably constitute sedentary work if a sit/stand option was applied. Plaintiff has offered no evidentiary support for this contention and has otherwise failed to articulate a reasonable explanation as to how the ALJ erred in this respect. In any event, the ALJ posed a hypothetical to the VE that was consistent with the ability to perform light-exertion jobs, the VE both identified a number of such jobs and stated that her testimony was consistent with the Dictionary of Occupational Titles, and plaintiff presented no evidence to contradict or rebut the VE's testimony. Accordingly, the ALJ properly relied upon Rule 202.13 of the light work grid in determining whether plaintiff was disabled solely as a result of her physical condition. Plaintiff's first claim of error is thus rejected.

### B. Accuracy of Hypothetical

At the hearing, the ALJ posed a hypothetical question to the VE regarding plaintiff's capacity to engage in substantial gainful activity. In response thereto, the expert identified

several thousand light-exertion jobs that a person with plaintiff's limitations, as found by the ALJ, could perform.[3] Plaintiff contends that the hypothetical did not accurately portray her limitations.

Where an ALJ poses a hypothetical question to a vocational expert that fully and accurately incorporates a claimant's physical and mental limitations, the expert's testimony in response thereto constitutes substantial evidence to support a finding that the claimant is capable of performing a significant number of jobs in the national economy. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the expert's answer cannot support such a finding.

Plaintiff contends that the ALJ failed to give sufficient consideration to certain functional restrictions recommended by Dr. Silvia Seoane, who is one of plaintiff's treating physicians. On February 24, 1997, Dr. Seoane prepared a disability report, apparently for plaintiff's employer, in which she stated the following: "10 lb. restriction[,] no bending or pushing, no repetitive movement." (Tr. 311) Dr. Seoane further stated that "these [restrictions] will be permanent, condition will not change." Id. Plaintiff claims that the ALJ was required to give controlling or significant weight to Dr. Seoane's opinion or, in the alternative, explain why that opinion was not entitled to controlling or significant weight, and that the ALJ failed to do either.

---

[3]The VE testified that a person with the limitations included in the hypothetical could work as a visual inspector, a security guard, or an inspector, and that there were over 7,000 such jobs available in the regional economy. (Tr. 502)

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997). Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a treating source's opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Section 404.1527(d)(2) further provides:

> When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

As an initial matter, the court notes that the ALJ incorporated in her RFC determination a restriction on pushing or pulling. Thus, the ALJ's findings were at least partially consistent with Dr. Seoane's opinion. To the extent the ALJ rejected Dr. Seoane's opinion in part, she did not err in so doing. The report on which plaintiff relies was prepared three years prior to the beginning of the claim period in question, and Dr. Seoane gave no supporting reasons for the statement that the restrictions contained in the report were "permanent."[4] Thus, the report is of

---

[4] Plaintiff's first DIB application was denied on February 23, 2000, by ALJ Musseman, whose decision became final upon the Appeals Council's denial of plaintiff's request for review. ALJ Sobrino declined to reopen the first application, a decision to which no challenge has been raised. Accordingly, the claim period for plaintiff's second application began on February 24, 2000.

marginal probative value with respect to the issue of plaintiff's back condition and the restrictions imposed thereby as of the date on which the claim period began. Further, there is other evidence in the record that is inconsistent with Dr. Seoane's findings. On September 25, 1997, a mere seven months after the issuance of the report on which plaintiff relies, Dr. Seoane limited plaintiff to lifting of no more than 15 pounds for three months. (Tr. 310) This restriction undermines Dr. Seoane's earlier determination that plaintiff's condition warranted a permanent restriction to lifting of no more than 10 pounds. In a disability questionnaire dated April 11, 2001, Dr. Seoane herself indicated, with regard to plaintiff's back, that plaintiff had no nerve root abnormalities and no muscle spasms, that she was able to walk on her heels and toes, squat, climb stairs, and get on and off an examination table, and that her gait was normal. In the area of the form asking the respondent to "describe any restricted function of the affected joints," Dr. Seoane wrote "N/A," which the court takes to mean that there were no such restrictions. (Tr. 327-30) In addition, Dr. Gupta, a medical consultant, indicated in a Physical Residual Functional Capacity Assessment form, dated April 18, 2001, that plaintiff could occasionally lift up to 20 pounds and frequently lift up to 10 pounds. (Tr. 347) Further, an MRI taken September 16, 2000, showed that "the lumbar spine appears within the range of normal for age with mild left L3-4 and L4-5 foraminal stenosis but no nerve root compression or HNP." (Tr. 438) This evidence is inconsistent with Dr. Seoane's February 24, 1997 statement regarding the extent and nature of plaintiff's limitations. Based on the foregoing, and the record as a whole, the court finds that the ALJ did not err in declining to adopt Dr. Seoane's opinion in its entirety.

In rendering her opinion, the ALJ did not specifically address Dr. Seoane's February 27, 1997 report. Thus, it at least arguable that the ALJ failed to comply with the requirements of 20 C.F.R. § 404.1527(d)(2). However, to the extent that such an error occurred, it was harmless. See Wilson v. Commissioner of Social Security, 378 F.3d 541, 547 (6th Cir. 2004)(compliance with § 404.1527(d)(2) required, but "[t]hat is not to say that a violation of the procedural requirement of § 1527(d)(2) could never constitute harmless error"). As noted above, the ALJ did not disregard Dr. Seoane's opinion in its entirety, and to the extent that the opinion was rejected, there was more than enough evidence in the record to warrant such rejection. Further, though the ALJ did not expressly address Dr. Seoane's report in her opinion, the ALJ noted, in rendering her RFC determination, that MRIs taken in September, 2000 and March, 2001 yielded largely normal results, that plaintiff had no sensory, motor, or reflex deficits associated with her back condition, and that plaintiff's allegations regarding her limitations were otherwise not fully consistent with the evidence in the record, medical and otherwise. Thus, the ALJ addressed the issues raised by Dr. Seoane's report, albeit indirectly. In addition, the report was not supported by any clinical findings, was inconsistent with the subsequent disability reports Dr. Seoane issued, and was inconsistent with other evidence in the record. Accordingly, the February 24, 1997 report was so "patently deficient that the Commissioner could not possibly credit it." Wilson, 378 F.3d at 547. In addition to the above, the VE testified that the light-exertion jobs she identified in response to the hypothetical did not require lifting of more than ten pounds and that they fell into the "light" category because they might require being on one's feet for more than two hours out of an eight-hour workday. (Tr. 504) The ALJ cited the jobs identified by the

VE in concluding that plaintiff retained the capacity to engage in substantial gainful activity and thereby, in essence, accommodated the greater lifting restrictions recommended by Dr. Seoane. Based on the above, the court finds that any error by the ALJ in failing to explicitly discuss Dr. Seoane's February 24, 1997 report constitutes harmless error.

Plaintiff has identified no other inaccuracies in, or omissions from, the hypothetical question posed by the ALJ, and the court, having reviewed the record, concludes that it contains substantial evidence to support the ALJ's RFC determination, as incorporated in the hypothetical. Accordingly, the VE's answer in response thereto constitutes substantial evidence to support the ALJ's finding that plaintiff is capable of performing a significant number of jobs in the regional economy and, thus, is not disabled.

### V. Conclusion

For the reasons stated above, the court recommends that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

Dated: 1-10-05

/s/ Virginia M. Morgan
VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

PURSUANT TO RULE 77 (d), FRCivP
COPIES HAVE BEEN MAILED TO THE FOLLOWING
 Mikal Lupinacci
 Vanessa Miree-Mays
 Social Security Adm.

On Jan. 12, 2005

/s/ _____
DEPUTY COURT CLERK